NORA J CHOROVER (Bar No. 547352)          Filed Electronically 5/13/2016
Law Office of Nora J. Chorover
11 Green Street
Boston, MA 02130
617-477-3550

Attorney for Plaintiff
CLEAN WATER ACTION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CLEAN WATER ACTION,<br><br>                    Plaintiff,<br><br>     v.<br><br>P.J. KEATING COMPANY,<br><br>                    Defendant. | Case No. 1:16-cv-10879<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br><br>(Clean Water Act,<br>33 U.S.C. §§ 1251 to 1387) |

CLEAN WATER ACTION ("CWA") by and through its counsel, hereby alleges:

**INTRODUCTION**

1.      This is a civil suit brought under the citizen suit enforcement provisions of the Clean Water Act, 33 U.S.C. § 1251, et seq. (the "Clean Water Act" or "the Act"). Plaintiff seeks declaratory judgment, injunctive relief, and other relief the Court deems appropriate for Defendant's illegal discharges of polluted stormwater into adjacent wetlands and waterbodies. P.J. Keating Company. ("P.J. Keating") operates a sand, gravel and asphalt manufacturing plant at 998 Reservoir Road, Lunenburg, Massachusetts (the "Facility"). As rain or snow melt comes into contact with the Facility, it picks up pollutants and flows to the adjacent wetlands and waterbodies.

2.      P.J. Keating has not complied with requirements for adequately controlling and monitoring industrial stormwater discharges under the Clean Water Act. Since P.J. Keating has not been

properly monitoring its discharges, it cannot have been ensuring that it is adequately controlling levels of pollutants in its stormwater discharges.

3.      Stormwater pollution is a significant source of water quality problems for the nation's waters. The Massachusetts Department of Environmental Protection has determined that stormwater runoff represents the single largest source responsible for water quality impairments in the Commonwealth's rivers, lakes, ponds, and marine waters.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the parties and the subject matter of this action pursuant to Section 505(a)(1)(A) of the Act, 33 U.S.C. § 1365(a)(1)(A), and 28 U.S.C. § 1331 (an action arising under the laws of the United States).

5.      On December 8, 2015, Plaintiff provided notice of Defendant's violations of the Act, and of its intention to file suit against Defendant (the "Notice Letter"), to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator of EPA Region 1; the Commissioner of the Massachusetts Department of Environmental Protection ("DEP"); and to Defendant, as required by the Act, 33 U.S.C. § 1365(b)(1)(A).

6.      More than sixty days have passed since notice was served on Defendant and the state and Federal agencies. Plaintiff is informed and believes, and thereupon alleges, that neither EPA nor the Commonwealth of Massachusetts has commenced or is diligently prosecuting a court action to redress the violations alleged in this complaint. This action is not barred by any prior administrative penalty under Section 309(g) of the Act, 33 U.S.C. § 1319(g).

7.      Venue is proper in the District Court of Massachusetts pursuant to Section 505(c)(1) of the Act, 33 U.S.C. § 1365(c)(1), because the source of the violations is located within this judicial district.

**PARTIES**

8.    Plaintiff CLEAN WATER ACTION ("CWA") is a nationwide non-profit public benefit corporation organized under the laws of the District of Columbia, with offices located in Boston and Northampton, Massachusetts. CWA has approximately 50,000 members who live, recreate, and work in and around waters of the Commonwealth of Massachusetts. CWA works to protect the nation's water resources. To further this goal, CWA actively seeks Federal and state agency implementation of the Act and other laws and, where necessary, directly initiates enforcement actions on behalf of itself and its members.

9.    Members of CWA have a recreational, aesthetic and/or environmental interest in the wetlands and waterbodies adjacent to the Facility. One or more of such members use and enjoy these wetlands and waterbodies for recreation, sightseeing, wildlife observation and/or other activities in the vicinity of and downstream of Defendant's discharges. These members use and enjoy the waters into which Defendant has caused, is causing, and will continue to cause, pollutants to be discharged. The interests of CWA's members have been, are being, and will continue to be adversely affected by Defendant's failure to comply with the Clean Water Act, as alleged herein. The relief sought herein will redress the harms to Plaintiff caused by Defendant's activities.

10.    Continuing commission of the acts and omissions alleged herein will irreparably harm Plaintiff and the citizens of the Commonwealth of Massachusetts, for which harm they have no plain, speedy, or adequate remedy at law.

11.    Defendant P.J. Keating is a Massachusetts corporation that operates a sand, gravel and asphalt manufacturing facility in Lunenburg, Massachusetts.

**STATUTORY BACKGROUND**

12.    <u>Pollutant Discharges without a Permit are Illegal</u>. The Clean Water Act makes the discharge of pollution into waters of the United States unlawful unless the discharge is in compliance with certain statutory requirements, including the requirement that the discharge be permitted by the Federal Environmental Protection Agency ("EPA") under the National Pollutant

3

Discharge Elimination System ("NPDES"). Sections 301(a), 402(a) and 402(p) of the Act. 33 U.S.C. §§ 1311(a), 1342(a), 1342(p).

13.     <u>EPA Has Made Stormwater Discharges from Sand, Gravel and Asphalt Manufacturing Facilities Subject to the Requirements of EPA's General Industrial Stormwater Permit</u>. In order to minimize polluted stormwater discharges from industrial facilities, EPA has issued a general industrial stormwater permit ("Stormwater Permit"). EPA first issued the Stormwater Permit in 1995 and reissued the permit in 2000, 2008, and 2015. See 60 Fed. Reg. 50804 (Sept. 29, 1995); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015).   Fabricated metal products facilities are subject to the requirements of this Stormwater Permit.  Stormwater Permit, Appendix D, pg. 6.

14.     <u>Sand, Gravel and Asphalt Manufacturing Facilities Must Comply with the Requirements of the Stormwater Permit</u>. The Stormwater Permit requires these facilities to, among other things:

   a.   ensure that pollutant control measures minimize pollutants in stormwater discharges, Stormwater Permit, pg. 14;

   b.   ensure that stormwater discharges do not cause or have the reasonable potential to cause or contribute to a violation of water quality standards, Stormwater Permit, pg. 20;

   c.   conduct monitoring of stormwater discharges at all Facility outfalls in each of the first four full quarters of permit coverage for compliance with benchmark limitations applicable specifically to fabricated metal products facilities, Stormwater Permit, pgs. 165-166;

   d.   report all monitoring results for all Facility outfalls to EPA by specified deadlines, Stormwater Permit, pgs. 48-49;

   e.   conduct corrective action after the average of four quarterly samples exceeds EPA benchmark value, Stormwater Permit, pgs. 27, 42;

   f.   conduct routine facility inspections at least quarterly (Stormwater Permit, pg. 22) and quarterly visual assessments (Stormwater Permit, pg. 24) to, among other things, sample and assess the quality of the facility's stormwater discharges, ensure that stormwater

control measures required by the Permit are functioning correctly and are adequate to minimize pollutant discharge, and timely perform corrective actions when they are not, Stormwater Permit, pgs. 22-26;

g.  timely prepare and submit to EPA annual reports that include findings from the facility inspections and visual assessments and the documentation of corrective actions, Stormwater Permit, pgs. 49-50; and

h.  comply with any additional state requirements, *see* Stormwater Permit, pgs. 170-173.

15.  <u>Citizens May Bring an Action to Enforce these Requirements</u>. Section 505(a)(1) and Section 505(f) of the Act provide for citizen enforcement actions against any "person," including individuals, corporations, or partnerships, for violations of NPDES permit requirements and for unpermitted discharges of pollutants. 33 U.S.C. §§ 1365(a)(1) and (f), § 1362(5). An action for injunctive relief under the Act is authorized by 33 U.S.C. § 1365(a). Violators of the Act are also subject to an assessment of civil penalties of up to $37,500 per day, pursuant to Sections 309(d) and 505 of the Act, 33 U.S.C. §§ 1319(d), 1365 and 40 C.F.R. §§ 19.1 - 19.4.

**STATEMENT OF FACTS**

16.  Defendant owns and operates a sand, gravel and asphalt manufacturing facility at 998 Reservoir Road, Lunenburg, Massachusetts (the "Facility").

17.  P.J. Keating's activities are subject to the terms of the Stormwater Permit.

18.  Numerous activities at the Facility take place outside and are exposed to rainfall. These include, without limitation, site preparation, mineral extraction, mineral processing, reclamation activities, and equipment/vehicle maintenance.

19.  During every rain event, rainwater coming into contact with the Facility becomes contaminated with pollutants.

20.  Plaintiff is informed and believes, and thereupon alleges, that rainwater and snow melt (collectively referred to hereinafter as "Stormwater") flowing over the Facility collects at various locations at the Facility.

21.     The polluted stormwater from the Facility discharges into adjacent wetlands and waterbodies.

## FIRST CAUSE OF ACTION

**Failure to Comply with the Monitoring Requirements of the Stormwater Permit:
Violations of 33 U.S.C. § 1311(a)**

22.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

23.     Since submitting its December 19, 2008 Notice of Intent to be covered by the Stormwater Permit, Defendant failed to comply with the requirement in Section 6.2.1.2 of the Stormwater Permit to conduct quarterly benchmark monitoringfrom all of its outfalls at the Facility.

24.     Stormwater discharges from the Facility to wetlands and the pond adjacent to the Facility.

25.     These violations establish an ongoing pattern of failure to comply with the Permit's monitoring requirements.

26.      Each of Defendant's violations of the monitoring requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the failure to monitor occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the facility and on which the violation occurred and/or continued.

## SECOND CAUSE OF ACTION

**Failure to Comply with the Reporting Requirements of the Stormwater Permit:
Violations of 33 U.S.C. § 1311(a)**

27.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

28.     Since at the latest June 1, 2011 to the present, P.J. Keating has failed to comply with the Stormwater Permit's requirement for reporting benchmark monitoring results to EPA. Stormwater Permit, sections 6.1.9 and 7.4. (Previous relevant sections: 4.3.1, 4.3.2, 7.2). Defendant's violations

of the Permit's reporting requirements are separate and distinct from violations of the Permit's monitoring requirements.

29.    These violations establish an ongoing pattern of failure to comply with the Permit's reporting requirements.

30.    Each of Defendant's violations of the benchmark monitoring reporting requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the failure to report occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the facility and on which the violation occurred and/or continued.

### THIRD CAUSE OF ACTION

**Failure to Reduce and/or Eliminate Pollutants to the Extent Achievable:**
**Violations of 33 U.S.C. § 1311(a)**

31.     Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herin.

32.    Since at the latest June 1, 2011 to the present, P.J. Keating has failed to properly monitor its stormwater discharges from all of its facility's outfalls, and therefore cannot have ensured that its control measures reduce and/or eliminate pollutants in its stormwater discharges to the extent achievable, using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice. Stormwater Permit, section 2.0 (pg. 14).

33.    Each of Defendant's violations of the reduction and/or elimination requirements of the Stormwater Permit is a separate and distinct violation of Section 301(a) of the Act, 33 U.S.C. § 1311(a), for each day on which the violation occurred and/or continued. Alternatively, each of these violations is a separate and distinct violation for each day on which stormwater was discharged from the Facility and on which the failure to reduce and/or eliminate pollutants occurred and/or continued.

7

## RELIEF REQUESTED

Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

1. Declare Defendant to have violated and to be in violation of the Act as alleged herein;

2. Enjoin Defendant from discharging stormwater containing excessive levels of pollutants from the Facility;

3. Require Defendant to implement the requirements of the Stormwater Permit;

4. Order Defendant to pay civil penalties of up to $37,500 per day of violation, pursuant to Sections 309(d) and 505(a) of the Act, 33 U.S.C. §§ 1319(d), 1365(a) and 74 Fed. Reg. 626, 627 (2009);

5. Order Defendant to take appropriate actions to restore the quality of navigable waters impaired by its activities;

6. Award Plaintiff's costs (including reasonable investigative, attorney, witness, and consultant fees) as authorized by the Act, 33 U.S.C. § 1365(d); and

7. Award any such other and further relief as this Court may deem appropriate.


Dated: 5/13/2016                           Respectfully submitted,


                                           *Nora J. Chorover /s/*
                                           NORA J. CHOROVER (Bar No. 547352)
                                           Law Office of Nora J. Chorover
                                           11 Green Street
                                           Boston, MA 02130
                                           Phone: 617-477-3550
                                           nchorover@choroverlaw.com

                                           Attorney for Plaintiff
                                           CLEAN WATER ACTION