# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CLEAN WATER ACTION,<br><br>Plaintiff,<br><br>v.<br><br>P.J. KEATING COMPANY<br><br>Defendant. | Case No.: |

## CONSENT DECREE

WHEREAS, plaintiff Clean Water Action ("Clean Water Action") is a nationwide non-profit organization working for prevention of pollution in the nation's waters;

WHEREAS, defendant P.J. KEATING COMPANY ("P.J. KEATING") operates a sand, gravel, and asphalt manufacturing plant at 998 Reservoir Road, Lunenburg, Massachusetts that is the subject of this lawsuit (the "Facility");

WHEREAS, Clean Water Action alleges that stormwater from the Facility discharges to wetlands and waterways and that these stormwater discharges are regulated pursuant to the federal Clean Water Act (the "Act") and covered by the Final National Pollutant Discharge Elimination System ("NPDES") Multi-Sector General Permit issued by the United States Environmental Protection Agency (the "Storm Water Permit"). *See* 33 U.S.C. §§ 1311(a), 1342(a), 1342(p); 65 Fed. Reg. 64746 (Oct. 30, 2000); 73 Fed. Reg. 56572 (Sept. 29, 2008); 80 Fed. Reg. 34403 (June 4, 2015).

WHEREAS, on December 8, 2015, Clean Water Action provided notice of alleged violations of the Act, and of Clean Water Action's intention to file suit against P.J. Keating to the Administrator of the United States Environmental Protection Agency ("EPA"); the Administrator

of EPA Region I; the Massachusetts Department of Environmental Protection; and P.J. Keating, pursuant to Section 505 of the Act, 33 U.S.C. § 1365;

WHEREAS, following receipt of the December 8, 2015 Notice, P.J. Keating examined the Facility and its SWPPP to identify any need for revision, added new berms and reinforced certain existing berms along its haul roads to avoid unintended stormwater discharges, developed additional BMPs for implementation, and carried out other activities in accordance with the Stormwater Permit.

WHEREAS, P.J. Keating anticipates that these steps, together with implementation of the Best Management Practices ("BMPs") and other measures set forth herein, will enable it to comply with applicable state water quality standards, benchmark limits, and any applicable effluent standards set forth in the Storm Water Permit;

WHEREAS, P.J. Keating denies the allegations of Clean Water Action that P.J. Keating has violated the Storm Water Permit or the Act;

WHEREAS, the parties have decided that it is in the best interests of all parties to resolve the litigation by agreement without adjudication of any fact, allegation, or law set forth above; and

WHEREAS, this Consent Decree ("Consent Decree") shall be submitted to the United States Department of Justice for the forty-five (45) day statutory review period pursuant to 33 U.S.C. § 1365(c).

NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES, AND ORDERED AND DECREED BY THE COURT, AS FOLLOWS:

2

Case 1:16-cv-10879-PBBS   Document 201   Filed 05/13/16   Page 3 of 12

## INJUNCTIVE RELIEF

1.      P.J. Keating agrees to operate the Facility in compliance with the applicable requirements of the Storm Water Permit and the Act, including any amendments to the Storm Water Permit or the Act that may be made during the term of this Consent Decree.

2.      Defendant will "reduce and/or eliminate" its stormwater pollutant discharges "to the extent achievable using control measures (including best management practices) that are technologically available and economically practicable and achievable in light of best industry practice." (Stormwater Permit, page 14).

3.      By June 15, 2016, work will be commenced to ensure that all stormwater discharges from the Facility into wetlands or waterways, including stormwater being discharged from the quarry access road on Fort Pond Road, and runoff onto Leominster Shirley Road that does not discharge to Facility wash ponds, are either eliminated through creation of impervious and armored berms or channeled to one or more outfalls where such discharges can be effectively monitored and controlled.  This work will be completed by November 30, 2016.

4.      By July 31, 2016, P.J. Keating will modify its SWPPP to contain a site plan that fully and accurately depicts the direction and flow of underground piping and stormwater flow at the Facility.  If necessary to verify the direction and flow of stormwater that runs through underground piping, P.J. Keating will perform dye testing or other inspection or testing.

5.      By June 30, 2016 P.J. Keating will confirm through dye testing or other means that there is no discharge from the wash pond on Leominster Shirley Road to the south towards the municipal storm drain system or to wetlands or waterways.

6.      P.J. Keating shall conduct monthly sampling of the outfall associated with the quarry pit during months in which the surface of the quarry pond is ice free such that pumping is likely to occur.  Such sampling results will be provided on a quarterly basis to Clean Water Action.

3

7.     By June 15, 2016, PJ Keating will implement additional measures to minimize stormwater pollutant discharges to adjacent wetlands and waterways caused by the tracking of sediment from the Facility onto public roadways adjacent to the Facility by trucks and other vehicles.

8.     Involvement by Clean Water Action.

a.     P.J. Keating shall permit representatives of Clean Water Action to perform up to two site visits to the Facility during normal daylight business hours during each year for the three years following the Effective Date of this Consent Decree, provided that Clean Water Action notifies P.J. Keating in writing at least 2 business days in advance of any such site visit. During such site visit, Clean Water Action shall have access to and permission to copy P.J. Keating's current SWPPP and any and all documentation required to be kept on site by the Storm Water Permit.

b.     For the term of this Decree as defined in paragraph 18 below, P.J. Keating shall provide Clean Water Action with the following documents, by emailing them to compliance@cleanwater.org and nchorover@choroverlaw.com:

1.  Copies of all documents P.J. Keating submits to EPA, the Commonwealth of Massachusetts and/or the Town of Lunenburg concerning the Facility's storm water discharges, including but not limited to all documents and reports submitted as required by the Storm Water Permit. Such documents and reports shall be provided not later than 5 business days following submittal to the governmental entity.

2.  Copies of any final revisions to P.J. Keating's SWPPP within 5 business days of a request by Clean Water Action.

3. P.J. Keating shall provide a completed quarterly compliance questionnaire with accompanying documentation to Clean Water Action on a quarterly basis not later than 10 business days following the end of the quarter or receipt of sampling lab data, whichever is later.

## PAYMENT, FEES AND COSTS

9. Within 15 days of entry of this Consent Decree, P.J. Keating shall pay the sum of $35,000 to the Nashua River Watershed Association, Inc. for projects intended to protect or enhance water quality in the Nashua River Watershed. The payment shall be made by check or money order made out to the Nashua River Watershed and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to the Nashua River Watershed Association, Inc., 592 Main Street, Groton, MA 01450-1230, Attention: Elizabeth Ainsley Campbell, Executive Director. A copy of the check shall be sent simultaneously to Clean Water Action.

10. Within 15 days of entry of this Consent Decree, P.J. Keating shall pay the sum of $20,000 to the Squan-A-Tissit Chapter of Trout Unlimited for projects intended to protect or enhance water quality in the Nashua River Watershed. The payment shall be made by check or money order made out to Trout Unlimited and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to Trout Unlimited, Squan-A-Tissit Chapter, P.O. Box 654 Pepperell, MA 01463, Attention: Chapter Vice President – Michael Rosser. A copy of the check shall be sent simultaneously to Clean Water Action.

11. Within 15 days after the Effective Date of this Consent Decree, P.J. Keating shall reimburse Clean Water Action in the amount of $22,000 to defray Clean Water Action's investigation fees and costs, consultant fees and costs, and attorneys' fees incurred up to the date

5

Case 1:16-cv-10879-PBS   Document 21   Filed 05/13/16   Page 6 of 12

of entry of this Consent Decree. Payments shall be made by check or money order, made out to Law Office of Nora J. Chorover, and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to Nora J. Chorover, Law Office of Nora J. Chorover, 11 Green Street, Boston, MA 02130.

12.     Within 30 days of entry of this Consent Decree, P.J. Keating shall pay to Clean Water Action $15,000 to be placed in a Client Trust Account held for its benefit by Law Office of Nora J. Chorover, to be used to reimburse Clean Water Action for reasonable fees and costs incurred to monitor P.J. Keating's compliance during the two year term of this Consent Decree ("Monitoring Payment").  The Monitoring Payment shall be paid by check or money order, made out to Law Office of Nora J. Chorover, Client Trust Account, and be delivered by certified mail, return receipt requested, or by nationally recognized overnight delivery company, to Law Office of Nora J. Chorover, 11 Green Street, Boston, MA 02130. Nothing in this paragraph or in this Consent Decree shall restrict Clean Water Action's right to seek additional compensation for fees or costs that it incurs to enforce P.J. Keating's compliance with the terms of this Consent Decree, and nothing herein shall be construed as a waiver of P.J. Keating's right to contest any such action. Any portion of the $15,000 that remains in the account at the expiration of the two year term of this Consent Decree shall be returned to P.J. Keating within 30 days of a request made by P.J. Keating, provided that such request is made within 30 days of the expiration of the Consent Decree.

## EFFECTIVE DATE OF CONSENT DECREE

13.     The parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Consent Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Consent Decree by the United States Attorney General and EPA. Therefore, upon signing of this Consent Decree by the parties, Clean Water Action shall serve, or cause to be served, copies of this

Consent Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. Upon the expiration of the forty-five (45) day review period provided by 33 U.S.C. § 1365(c)(3), the parties will jointly move the Court for entry of this Consent. The date that the Court enters this Consent Decree is the Effective Date of this Consent Decree. In the event the Court does not so enter this Consent Decree in the form presented, subject to Paragraph 31 below, the provisions of this Consent Decree shall be null and void and of no effect.

RELEASE

14.     Upon the Effective Date of this Consent Decree, Clean Water Action, on its own behalf and on behalf of its members, parents, subsidiaries, affiliates, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases P.J. Keating and all its managers, members, parents, subsidiaries, affiliates, directors, officers, agents, attorneys, representatives, employees, predecessors in interest in or title to the Facility, successors, and assigns from, and waives forever all claims, whether known or unknown, for damages, penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed in this Action, for the alleged failure to comply with the Act and the Storm Water Permit at the Facility, up to and including the date this Consent Decree is executed by the parties. Clean Water Action does not release any claims to enforce any term of this Consent Decree. Clean Water Action does not release any claims for violations of the Storm Water Permit or the Act that may occur or continue after the date this Consent Decree is executed by the parties.

15.     P.J. Keating, on its own behalf and on behalf of its parents, subsidiaries, affiliates, predecessors in interest in or title to the Facility, successors, assigns, directors, officers, agents, attorneys, representatives, and employees, releases Clean Water Action and its members,

7

subsidiaries, affiliates, successors, assigns, directors, officers, agents, attorneys, representatives, and employees from, and waives forever all claims, whether known or unknown, which arise from or pertain to this Action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed or which could have been claimed for matters associated with or related to this Action up to and including the date this Consent Decree is executed by the parties. P.J. Keating does not release any claims to enforce any term of this Consent Decree. P.J. Keating does not release any claims for activities or events that may occur or continue after the date this Consent Decree is executed by the parties.

## DISPUTE RESOLUTION

16.     If a dispute under this Consent Decree arises, or either party believes that a breach of this Consent Agreement has occurred, the parties shall meet and confer within the later of fourteen (14) calendar days of receiving written notification from the other party of a request for a meeting, or such other time as the parties may agree upon, to determine whether a violation has occurred and to develop a mutually agreed upon plan, including implementation dates, to resolve the dispute. If the parties fail to meet and confer, or the meet-and-confer does not resolve the issue, after at least seven (7) days have passed after the meet-and-confer occurred or should have occurred, either party shall be entitled to all rights and remedies under the law, including filing a motion with the District Court of Massachusetts, which shall retain jurisdiction over this matter for the limited purposes of enforcement of the terms of this Consent Decree. The parties shall be entitled to seek fees and costs incurred in any such motion. Any fee determination by the Court shall be governed by the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §1365(d) and applicable case law interpreting such provisions.

## MISCELLANEOUS PROVISIONS

17. This Consent Decree was entered by the parties as a settlement of disputed matters, and neither this Consent Decree nor any action taken pursuant to it shall be construed as an admission of any fact or liability, either expressed or implied; and this Consent Decree shall not be offered by the parties hereto or any other person as evidence of any alleged fact or liability.

18. The Term of this Consent Decree shall be three years after the Effective Date.

19. This Consent Decree shall be binding on the parties and on their respective successors and assigns.

20. This Consent Decree may be executed in one or more counterparts which, taken together, shall be deemed to constitute one and the same document.

21. Nothing in this Consent Decree shall be construed to limit in any way P.J. Keating's obligations under any federal, state, or local law or regulation governing any activity required by this Consent Decree.

22. In the event that any of the provisions of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

23. The language in all parts of this Consent Decree, unless otherwise stated, shall be construed according to its plain and ordinary meaning.

24. The undersigned are authorized to execute this Consent Decree on behalf of their respective parties and have read, understood and agreed to all of the terms and conditions of this Consent Decree.

25. All agreements, covenants, representations and warranties, express or implied, oral or written, of the parties concerning the subject matter of this Consent Decree are contained herein. This Consent Decree and any attachments are made for the sole benefit of the parties, and no

other person or entity shall have any rights or remedies under or by reason of this Consent Decree, unless otherwise expressly provided for therein.

26.     The parties expressly understand and agree that each party has freely and voluntarily entered into this Consent Decree with and upon advice of counsel.

27.     This Consent Decree and any attachments contain all of the terms and conditions agreed upon by the parties relating to the matters covered by the Consent Decree, and supersede any and all prior and contemporaneous agreements, negotiations, correspondence, understandings, and communications of the parties, whether oral or written, respecting the matters covered by this Consent Decree. This Consent Decree may be amended or modified only by a writing signed by the parties or their authorized representatives, followed by order of the Court adopting such change.

28.     Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to Clean Water Action pursuant to this Consent Decree shall, unless otherwise provided in this Consent Decree, be sent via electronic mail to nchorover@choroverlaw.com and compliance@cleanwater.org.

Any notices or documents required or provided for by this Consent Decree or related thereto that are to be provided to P.J. Keating pursuant to this Consent Decree shall, unless otherwise provided in this Consent Decree, be hand delivered, sent by U.S. Mail, postage prepaid, or by nationally recognized overnight delivery company, and addressed as follows, or sent via electronic mail to President, P.J. Keating Company, 998 Reservoir Rd, Lunenburg, MA 01462 with a copy to deborah.murphey@oldcastlelaw.com.

Each party shall notify the other parties of any change in their contact information within fourteen (14) days of any such change.

10

29.     P.J. Keating does not, by entering into this Consent Decree, waive any defenses or rights with respect to any allegation or claim asserted by anyone, including Clean Water Action, of any kind or nature arising or alleged after the date P.J. Keating signs this Consent Decree, and P.J. Keating does not waive any defenses or rights with respect to any allegation or claim which may be asserted by EPA or the Commonwealth of Massachusetts.

30.     Signatures of the parties transmitted by facsimile or electronic mail are binding.

31.     If for any reason the Court should decline to approve this Consent Decree in the form presented, the Consent Decree shall be null and void and the parties agree to work together in good faith to attempt to agree on modifications to this Consent Decree within thirty (30) days to make it acceptable to the Court.

32.     This Court shall retain jurisdiction over this matter and allow this action to be reopened for the purpose of enabling the parties to this Consent Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Consent Decree.

Clean Water Action

By: _____     Dated: _____

P.J. Keating Company

By:_____     Dated: _____

APPROVED:

_____ 7/19/16
United States District Judge

11